## WILEY and Another *v.* PRATT and Others.

JUDGMENT—APPEARANCE BY ATTORNEY.—Where a judgment is rendered in a court of general jurisdiction, and the record shows that an attorney of the court appeared for the defendant and filed an answer, the jurisdiction of the court can not be controverted, unless it be by proof of fraud, or that the defendant was not a citizen of the state, nor during the pendency of the proceedings within the jurisdiction of the court, and had neither been notified of the pendency of the suit, nor had given authority to an attorney to enter an appearance for him. Page 633.

SAME.—Where a judgment has been rendered against a defendant who has not been within the jurisdiction of the court during the pendency of the action, nor had notice thereof, upon the appearance by an attorney without authority, upon establishing the fact that the appearance was unauthorized, he will be relieved from the judgment. Page 634.

Wiley and Another *v.* Pratt and Others.

SAME.—Where a party was within the process of the court, although not served with notice, and an appearance has been entered for him by an attorney, the court will require him to aver in his proceedings, to obtain relief from the judgment rendered, that he has a defense to the action, and if no rights of *bona fide* purchasers have intervened, the court will stay proceedings under the judgment while it preserves its lien, and permit the party to make his defense to the original action, and, to the extent he may succeed in that defense, relieve him from the effect of the judgment. Page 635.

APPEAL from the *Marion* Circuit Court.

### ABSTRACT.

On the 13th day of *March,* 1863, *Elizabeth Pratt* and *Asa Pratt,* her husband, filed their complaint in the *Marion* Circuit Court against *Washington C. Depaw, William Y. Wiley, William O. Rockwood,* and *Esther Willetts.* They alleged that before and on the 22d day of *August,* 1856, the said *Elizabeth* was seized in fee-simple of lots 12 and 13, in the subdivison of out-lot 177, in the city of *Indianapolis;* that *Elizabeth* and *Asa Pratt,* on the 21st day of *August,* 1856, made to *Willis W. Wright* their promissory note in writing, whereby they promised to pay *Wright* the sum of $202.50 twelve months after the date thereof, to secure the payment of which said *Elizabeth* and *Asa* mortgaged to *Wright* the said lots; that *Wright* assigned said note to *Depaw,* who, at the *October* term, 1857, of the *Marion* Circuit Court, commenced proceedings to foreclose the mortgage, and sell the lots to satisfy the amount due upon the note; that at the *October* term, 1857, of said court certain attorneys at law, practicing in said court, without the authority of said *Elizabeth* or *Asa,* caused an appearance to be entered for them in said court as defendants in said suit, and filed an answer for them to the complaint; that neither said *Elizabeth* nor *Asa* had any knowledge, notice, or information whatever of the pendency of said proceeding, or of the appearance of the attorneys in their behalf, until long after the sale of said lot as hereinafter mentioned; that afterward, at said

*October* term, 1857, final judgment was rendered against said *Elizabeth* and *Asa* for the sum of $208.10 and costs, and the sale of said lots to satisfy said sum; that on the 12th day of *July*, 1858, a copy of the judgment was issued by the clerk of said court to the sheriff of the county aforesaid; that by virtue thereof the sheriff, on the 18th day of *September*, 1858, sold said lots to *Wiley* and *Rockwood* for the sum of $250, and in pursuance thereof said sheriff made to the purchasers a deed conveying said lots to them; that said lots at the time of the sale were of the value of $1000, and that the purchasers have since conveyed said lots to *Esther Willetts;* that no summons was served on said *Elizabeth* or *Asa* in the cause, nor was a summons issued in the proceeding; that neither said *Elizabeth* nor *Asa* had any knowledge, notice, or information of the rendition of said judgment, nor of the issuing of a copy thereof to the sheriff, nor of the sale by the sheriff of the lots, nor of the conveyance of the lots to said *Wiley* and *Rockwood*, nor of the conveyance of the lots by *Wiley* and *Rockwood* to *Esther Willetts*, until the —— day of ——; that said court had not acquired jurisdiction of said *Elizabeth* and *Asa* in the cause; that said judgment of *Depaw* against said *Elizabeth* and *Asa* is null and void, and that no valid sale of the lots could be made under or by virtue of the judgment; that said judgment, sales and deeds are a cloud upon the title of said *Elizabeth* to the lots, and that *Elizabeth* and *Asa* pray that said judgment, sales, and deeds be set aside, and declared null and void, and that *Wiley*, *Rockwood*, and *Willetts* be each divested of all right and title acquired by virtue of said sales and conveyances.

Afterward, on the 24th day of *March*, 1862, *Wiley* and *Rockwood* filed a demurrer to the complaint, assigning as reasons therefor that the complaint did not state facts sufficient to constitute a cause of action, and that the court had no jurisdiction of the subject of the action.

The court overruled the demurrer, and the defendants excepted.

*Wiley* and *Rockwood* filed an answer, admitting the execution of the note and mortgage, the rendition of the decree, the sale of the real estate by the sheriff, and the conveyances as stated in the complaint; but denying every other allegation of the complaint.

The defendant, *Depaw*, filed an answer, admitting the execution of the note and mortgage, and the assignment to him; that he foreclosed the mortgage, and that the real estate was sold by the sheriff; but denied every other allegation of the complaint.

*Depaw* afterward filed an additional paragraph of his answer, that need not be noticed. *Esther Willetts* was defaulted. There was a trial by the court and a finding for the *Pratts*.

The record then proceeds: "The court finds that, at the *October* term, in the year 1857, of this court, and on the 5th day of *February*, 1858, the said *Washington C. Depaw*, in the suit mentioned in the complaint, in the cause wherein the said *Depaw* was plaintiff and the said *Pratts* were defendants, recovered a judgment against said *Pratts* for $208.10, and for the foreclosure of a mortgage on the lots of land numbered 12 and 13, in the subdivision of outlot 177, in the city of *Indianapolis*, county of *Marion*, state of *Indiana*, and for the sale of said lots, to satisfy the said sum and costs, as alleged in the complaint.

"The court further finds that the said lots were sold, under said judgment, to *Rockwood* and *Wiley*, to satisfy the same, by the sheriff of the county.

"The court further finds that said *Pratts* had not, nor had either of them, been served with any process in said foreclosure proceedings; nor had they, nor either of them, any notice whatever of the pendency of said proceedings, or of said judgment or sale, until long after the time of making said sale by said sheriff; and that said judgment, and sale, and conveyances of said lots to said *Rockwood* and *Wiley*, and the sale and conveyance by them to said *Willetts*, are, and each of them is, null and

void, and ought to be set aside, canceled, and annulled, and held for naught.

"It is therefore ordered and adjudged by the Court that the said judgment, so recovered by said *Depaw* against said *Pratts*, on the 22d day of *February*, 1858, in this court, whereby the said *Depaw* recovered the sum of $208.10 and costs, and the foreclosure of said mortgage and sale of said lots 12 and 13, in said subdivision of out-lot No. 177, in the city of *Indianapolis*, ordered to satisfy said sum, be and the same is in all things set aside, annulled, and held for naught; and that the said sale and conveyances of said lots to said *Rockwood* and *Wiley*, and by them to said *Willetts*, be and the same are severally set aside, and revoked, and canceled; and the said *Rockwood*, and *Wiley*, and *Willetts* are hereby divested of all right, title, and interest in said lots, and that the said lots, and all interest therein, shall vest in said *Elizabeth Pratt* as fully as before the rendition of said judgment of said *Depaw* against them."

RAY, CH. J.—The decision of this case must rest upon the conclusiveness of the statement in the record of the proceedings and judgment under which the land was sold, that the defendants appeared by their attorneys and filed their answer.

It is insisted by the appellants, that while, to an action brought upon a judgment rendered in another state, the defendant may show, by evidence *dehors* the record, that he was not within the jurisdiction of the court at any time between the commencement of the action and the recovery of the judgment; and that an attorney, who is shown by the record to have entered an appearance for him, had no authority to do so ; yet in the case of a domestic judgment, where either service of process or an appearance by an attorney of the court is shown by the recitals, the record can not be impeached, except on the ground of fraud.

We think the rule should be stated thus: Where a judgment is recovered in a court of general jurisdiction against a defendant, and the record shows that an attorney of the court appeared for the defendant and filed an answer, the jurisdiction of the court can not be controverted, unless it be by proof of fraud, which we are not in this case required to decide, or that the defendant was not a citizen of the state, nor during the pendency of the proceedings within the jurisdiction of the court in which the judgment was rendered, and had neither been notified of the pendency of the suit, nor had given authority to the attorney to enter an appearance for him. The only case where the courts will relieve, to a limited extent, from the conclusive effect of the record, will be noticed hereafter.

This rule gives equal and "full faith and credit to the judicial proceedings of every state" the same faith and credit that we give to the records of our own state courts; and although the terms "domestic judgments" and "the judgments of other states" are used in various decisions, and a distinction attempted to be drawn between them as two distinct classes, still we believe the rule we have stated is within the principle upon which all the authorities rest. In the case of *Sherrard* v. *Nevius,* 2 Ind. 241, the action was upon a judgment obtained in *New Jersey,* and the plea was "that he (*Sherrard*) never had any notice of said suit; that he did not appear either in person or by attorney and defend the suit; that the appearance entered for him was without his knowledge or authority; that no process was served upon him; and that, at the time of the trial, and at the time of issuing the process, he resided and still resides in *Indiana;*" and it was held, the appearance for him by an attorney might be shown to have been without authority. This case was based upon the ruling in the case of *Shelton* v. *Tiffin and Perry,* 6 How. S. C. 163, where, in an action on a judgment recovered in the Circuit Court of the *United States* for *East Lousiana, Perry* was permitted to prove that he was, at the time the suit was instituted

and tried, a citizen of *Missouri*, and had not authorized the appearance of counsel for him. This was followed again in *Boylan* v. *Whitney*, 3 Ind. 140. In *Hall* v. *Williams*, 6 Pick. 232, the defendant was permitted to show his absence from the jurisdiction. The Supreme Court of *Massachusetts* afforded relief to a defendant, a citizen of another state, from a judgment entered against him in *Massachusetts* upon an unauthorized appearance by an attorney. *Bodurtha* v. *Goodrich*, 3 Grey, 511. Chief-Justice *Shaw* in that case uses this language: "We think therefore that where, as it appears in the present case, the defendant was an inhabitant of another state, that no property of his was attached by trustee process, or otherwise, and that he was not served with process, and the only ground to sustain the jurisdiction is that he appeared by attorney, it is competent for the plaintiff in error to aver and prove that such attorney was never authorized to appear for him, and thereby give the court jurisdiction." This was a domestic judgment, and the court admit the application of the same rule which had theretofore been held in regard to judgments of other states. The relief was granted upon writ of error, but the claim to relief is admitted to depend upon the right to deny the authority of the attorney to appear.

The case, cited by the appellees from the District Court of *Philadelphia*, of *Fritz* v. *Fisher*, 3 Am. Law Reg. 243, has no pertinence to the question before us. That was an action of debt against *Fisher*, founded on the proceeding of a court of limited jurisdiction, resulting in a judgment rendered by a justice of the peace in *New Jersey*. The action before the justice was against *Smith* and *Fisher*. The District Court say: "All we have in the transcript of the record now before us to show that *Fisher* was meant to be included in the decision against his co-defendant, *Smith*, is an entry of judgment against 'defendants.' All the previous proceedings, from the institution of the suit down to the time of this entry, are against *Smith* only. He is the

only person served, the only person who appears to defend or contest the cause."

While, however, a party is permitted to controvert the authority of the attorney to appear for him, when he was without the jurisdiction of the court rendering the judgment, and upon establishing the fact that the appearance was unauthorized is relieved from the enforcement of the judgment, this relief will not be granted where the defendant was within the jurisdiction of the court, and an unauthorized appearance has been entered for him by counsel, unless he can establish a defense on the merits to the cause of action in which the judgment was rendered. And this rule is a reasonable one. Where the defendant has not been within the jurisdiction of the court, it would not be just to compel him to come under that jurisdiction, and establish his defense to the action, in order to obtain relief from a judgment obtained without notice; and therefore the relief granted him must be absolute immunity from the judgment. But where the party was within the reach of the process of the court, although not served with notice, and an appearance has been entered for him by an attorney, the court may well require him to aver in his proceedings, to obtain relief from the judgment, that he has a defense to the action, and if no rights of *bona fide* purchasers have intervened, the court will stay proceedings under the judgment, while it preserves its lien, and permit the party to make his defense to the original action, and, to the extent he may succeed in that defense, relieve him from the effect of the judgment.

This rule has been recognized in this state. On the authority of *Denton* v. *Noyes*, 6 Johns. 296, and *Critchfield* v. *Porter*, 3 Ohio, 518, the case of *Pierson* v. *Holman*, 5 Blackf. 482, was decided. The facts and the decision may be thus stated: "Where the record of a cause, in which there were judgment by default, writ of inquiry, etc., did not show that process had been served, but stated that the parties appeared by their attorneys, and at a

subsequent term to that in which the final judgment was, rendered, the defendant, on affidavits that he had no notice of the suit, that he had not authorized the appearance, *and that he had a good defense,* moved that the judgment be set aside. Held, that the motion ought not to be granted, but that an order should be made giving the defendant leave to plead in bar, on or before the calling of the cause at the next term after the order was made, and staying, in the mean time, all proceedings under the judgment."

The case of *Denton* v. *Noyes, supra,* was questioned in *Allen* v. *Stone,* 10 Barb. S. C. Rep. 547; but was approved in *Sterne* v. *Bently,* 3 How. Prac. Rep. 331, and in *Blodget* v. *Conklin and Arnold,* 9 How. Prac. Rep. 442; and in *Ellsworth* v. *Campbell,* 31 Barb. S. C. Rep. 134, after a review of the rulings of the *New York* courts on this subject, it is said, in approval of the course pursued in *Denton* v. *Noyes:* "Such must now be deemed the settled practice of the court. It will always afford adequate relief to a defendant, while, at the same time, it protects a plaintiff who has obtained a judgment, so far as he can be protected, from some of the injurious consequences to which he might be exposed by the delay."

The Supreme Court of *New Hampshire* also approved the ruling in *Denton* v. *Noyes,* in deciding the case of *Bunton* v. *Lyford,* 37 N. H. 512.

We regard the rule adopted by this court, in the case cited of *Pierson* v. *Holman,* as reasonable; and, well supported as it is by authority, it may be considered as the law in this state.

The allegations of the complaint do not bring the case now under consideration within this decision, as there is no averment that the appellees were not citizens of the state, nor that they had any defense to the merits of the action in which the judgment was rendered, and we therefore hold, that the demurrer to the complaint filed by the appellants should have been sustained; but we do not

determine whether, had such averment been made, any relief could have been obtained against the appellants, as *bona fide* purchasers under the sheriff's sale, by virtue of the decree of foreclosure, nor whether, where our statute provides that the title of innocent purchasers at sheriff's sale shall be protected, upon the reversal of a judgment, the policy of the law would not require the same shield to be extended over the rights acquired ·by appellants under the original judgment herein.

The judgment is reversed at the cost of the appellees, and the case remanded, with directions to the court below to sustain the demurrer to the complaint.

*Thomas A. Hendricks* and *Oscar B. Hord,* for appellants. *S. Major,* for appellees.